UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID LANDEIS, suing individually, and on behalf of the general public,

        Plaintiff,

   v.

FUTURE FORD, FORD MOTOR COMPANY, and DOES 1-10,

        Defendants.

2:04-CV-2733-MCE-PAN

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff David Landeis ("Plaintiff") alleges that Future Ford ("Defendant") and Ford Motor Company[1] violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq., and the California Consumer Report Act ("CCRA"), by obtaining his credit report without a permissible purpose.

///

---

[1] Plaintiff's claims against Ford Motor Company have been settled. *See* Order Regarding Settlement and Disposition, March 21, 2006. Accordingly, the present Motion addresses only the remaining claims against Defendant Future Ford.

1

Plaintiff further alleges that Defendant violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et. seq., the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790 et. seq., and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§  et. seq., by selling him a damaged vehicle as new.  For the reasons set forth below, Defendant's Motion for Summary Adjudication is granted as to Plaintiff's claims under the FCRA.  With respect to the MMWA claim, the Court lacks jurisdiction to hear the claim.  Accordingly, that claim is dismissed with prejudice.  Plaintiff's remaining state law claims are dismissed without prejudice.

**BACKGROUND**

On July 12, 2003, Plaintiff David Landeis ("Plaintiff") visited Future Ford auto dealership in pursuit of a new vehicle. Upon his arrival, Plaintiff noticed several Roush style Mustangs. He took one of the Mustangs for a test drive and ultimately decided to purchase the car.  He returned on Sunday, July 13, 2003, and notified the general manager of his decision to purchase the Mustang.  Plaintiff clarified repeatedly with the staff of Future Ford that he wished to pay cash for the vehicle and did not wish to have his credit checked.  Future Ford originally agreed to Plaintiff's demand that his credit not be checked in conjunction with the transaction.

While Plaintiff had repeatedly told Defendant he intended to pay cash for the vehicle, Plaintiff could not immediately retrieve sufficient cash to do so.

Rather than permit Plaintiff to depart the lot without the Mustang, Future Ford's staff indicated they would accept his personal check in lieu of cash. Plaintiff agreed to the alternate form of payment and wrote Future Ford a post-dated check in the amount of $28,134.39. Plaintiff requested and Future Ford agreed to hold the instrument until July 17, 2003. Despite Future Ford's repeated assurances that no credit check be performed, during the closing process, Future Ford ran Plaintiff's credit motivating the present action.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Township of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

1     The standard that applies to a motion for summary
2 adjudication is the same as that which applies to a motion for
3 summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v.*
4 *ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

10 *Celotex Corp. v. Catrett*, 477 U.S. at 323(quoting Rule 56(c)).
11     If the moving party meets its initial responsibility, the
12 burden then shifts to the opposing party to establish that a
13 genuine issue as to any material fact actually does exist.
14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
15 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.
16 253, 288-89 (1968).

17     In attempting to establish the existence of this factual
18 dispute, the opposing party must tender evidence of specific
19 facts in the form of affidavits, and/or admissible discovery
20 material, in support of its contention that the dispute exists.
21 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
22 the fact in contention is material, i.e., a fact that might
23 affect the outcome of the suit under the governing law, and that
24 the dispute is genuine, i.e., the evidence is such that a
25 reasonable jury could return a verdict for the nonmoving party.
26 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52
27 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper*
28 *Workers*, 971 F.2d 347, 355 (9th Cir. 1987).

4

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

5

**ANALYSIS**

**1.   FAIR CREDIT REPORTING ACT**

"It is the purpose of [the FCRA] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of [the FCRA]."  15 U.S.C. § 1681.    In general, 15 U.S.C. § 1681b enumerates the "permissible purposes" for which a credit reporting agency may furnish a consumer credit report.  In relevant part, a credit reporting agency may furnish a credit report to a person which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer.  *Id.* at 1681b(a)(3)(A),(F)(i).  The statute further provides that "[a] person shall not use or obtain a consumer report for any purpose unless ... the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished ...."  *Id.* at 1681b(f)(1).
///
///

6

1    Plaintiff urges the Court to find that Defendant obtained
2 his credit report without a permissible purpose and, therefore,
3 is liable under the FCRA.  Conversely, Defendant claims it had a
4 permissible purpose when Plaintiff paid for his new vehicle with
5 a post-dated personal check and requested the instrument be held
6 for three days.  As explained below, the Court agrees with
7 Defendants that Plaintiff's credit report was obtained in accord
8 with the strictures mandated under the FCRA.
9    Plaintiff first concedes that payment by way of a negotiable
10 instrument does not equate legally to payment by cash.  Plaintiff
11 further concedes Defendant originally had a legal right to obtain
12 Plaintiff's credit report.  Notwithstanding these concessions,
13 Plaintiff avers that legal right was lost when Defendant
14 expressly agreed not to obtain his credit report in conjunction
15 with the credit transaction.  As support for his position,
16 Plaintiff points to both a Seventh Circuit decision as well as a
17 sister district court decision wherein those courts found that an
18 agreement to forego a credit check can render the underlying
19 transaction sufficiently inchoate to nullify any existing
20 permissible purpose.  *See Scott v. Real Estate Fin. Group,* 183
21 F.3d 97 (2d Cir. 1999); *see also Uhlig v. Berge Ford, Inc.*, 257
22 F.Supp.2d 1228 (D. Ariz. 2003).
23    In *Scott*, the plaintiffs sought to rent a home from the
24 defendant.  During the negotiation of that transaction, the
25 Scotts agreed to rent the home on condition that their credit not
26 be screened.  Despite that agreement otherwise, the defendant
27 obtained the Scotts' credit report.  The Scotts promptly filed
28 suit claiming an FCRA violation.

7

The Seventh Circuit reasoned that the Scotts' offer to rent a home conditioned on an agreement to forego a credit check negated defendant's legitimate business need under 15 U.S.C. 1681b(F)(i). In sum, the court concluded that

> "parties to a transaction may elect to structure their negotiations in such a way that those negotiations--no matter how apparently detailed--constitute expressions of interest that are too inchoate to give the landlord a "legitimate business need for the information in connection with a business transaction involving the consumer" within the meaning of Section 1681b(3)(E) [now 1681b(a)(3)(F)].

*Id.* at 100.

The clear import of the court's holding is that the legitimacy of the business need for obtaining a credit report is lost when the expression of interest is too "inchoate" to rise to the level of a transaction. Based on this rationale, the court proclaimed; "[i]n essence, the parties are free to contractually define whether or not a 'legitimate business need' exists 'in connection with a business transaction.'" *Id.*

In *Uhlig*, the facts virtually mirrored those at issue here. Specifically, plaintiff purchased a vehicle from defendant with both a trade in and a personal check. During the sales transaction, defendant conducted a credit check despite plaintiff's demand otherwise and she sought legal redress. In reliance on the *Scott* case, the district court explained that if parties can contractually agree to what a "legitimate business need" is, it could perceive no reason why they could not contractually agree as to whether any other purpose stated in section 1681b(a)(3) is permissible. *Uhlig*, 257 F.Supp.2d at 1233. This Court respectfully disagrees.

8

The *Scott* case is quite distinguishable from the *Uhlig* case and the case at bar.  In *Scott*, the negotiation was sufficiently inchoate to have negated the legitimacy of the business need pursuant to 1681b(F)(i).  Plaintiffs made an offer to a broker on condition that the transaction would proceed without a credit check.  The broker proceeded to check plaintiffs' credit prior to the parties engaging in any credit transaction.  Accordingly, the legitimate business need set forth in 1681b(F)(i) would have been the sole permissible purpose for obtaining the report.  In light of the uncertainty of the underlying transaction, the court found factual issues regarding the legitimacy of the business need and reversed the district court's grant of summary judgment.

Conversely, here, Plaintiff actually entered into a credit transaction pursuant to 1681b(a)(3)(A) which was clearly defined by tendering a credit instrument in exchange for an automobile. While it is undisputed that Plaintiff objected to having his credit checked, it is likewise undisputed that he proceeded with a credit transaction securing Defendant's right to obtain his credit report under section 1681b(a)(3)(A).

To the extent Plaintiff is arguing his repeated objections negate Defendant's legal right to proceed with the credit check, the Court finds this argument unpersuasive.  The Federal Trade Commission tasked with promulgating the FCRA's implementing regulations has clarified that section 1681b allows parties to obtain credit reports without the consumer's permission *or over their objections*, as long as the report is being obtained for a permissible purpose.  16 C.F.R. pt. 600, app. (emphasis added).
///

9

Holding that Plaintiff's objections negate a right expressly granted under both the FCRA and its implementing regulations inappropriately reads an authorization requirement into the FCRA that Congress nor the Federal Trade Commission elected to include. Accordingly, Defendant's Motion for Summary Adjudication of Plaintiff's FCRA claim is granted.

**2. MAGNUSON-MOSS CONSUMER WARRANTY ACT**

The MMWA permits "a consumer who is damaged by the failure of a supplier [or] warrantor . . . to comply with any obligation under this chapter [15 U.S.C. §§ 2301 et seq.], or under a written warranty [or] implied warranty" to sue in United States district court. A consumer's right to seek redress in federal court is premised on the condition precedent that "the amount in controversy is [not] less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d). The purpose of the $50,000 minimum amount in controversy is "to avoid trivial or insignificant actions" being pursued in federal courts. H.R. Rep. No. 93-1107 (1974), reprinted in 1974 U.S.C.C.A.N. 7702, 7724. Accordingly, the Court must examine whether jurisdiction is proper based on the amount in controversy.

While the MMWA provides a substantive right of action to consumers, it does not specify the appropriate measure and type of damages that are available.

///

In fact, the statute expressly provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title or under a written warranty, implied warranty, or service contract, may bring suit for *damages and other legal and equitable relief*." 15 U.S.C. § 2310(d). Consequently, courts, including the Ninth Circuit, have turned to the applicable state law to determine what remedies are available under the MMWA. *See Kelly*, 377 F.3d at 1039; *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004).

In the present action, the underlying state law is California's Song-Beverly Act. Pursuant to the remedies available under that Act, Plaintiff prays for rescission of the contract for sale; restitution of all consideration Plaintiff paid Defendants; incidental and consequential damages; actual and statutory damages; reasonable attorney fees; costs and expenses; and other relief as the court deems proper. Plf.s' Amended Compl., p. 19. Plaintiff further alleges that as a proximate result of the breaches of implied warranty, he has sustained, and continues to sustain, damages in the approximate amount of $50,000.00. *Id.*

As with suits in diversity, the Court looks no farther than the pleadings to determine the amount in controversy unless "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Kelly v. Fleetwood Enters.*, 377 F.3d 1034, 1038 (9th Cir. 2004)(citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

///

11

If it appears to a legal certainty that the claim cannot meet the statutory threshold, the suit should be dismissed for lack of jurisdiction. *Id.* (citing *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984)(applying the legal certainty test to a Magnuson-Moss Warranty Act claim). The issue here is whether Plaintiff can meet the jurisdictional minimum of $50,000.

**A.    Amount in Controversy**

As noted above, Plaintiff is seeking rescission of the contract for sale; restitution of all consideration Plaintiff paid Defendants; incidental and consequential damages; actual and statutory damages; reasonable attorney fees; costs and expenses.

It is clear that in calculating the jurisdictional amount, the Court may not consider pendent state law claims. *See Critney v. Nat'l City Ford, Inc.*, 255 F. Supp. 2d 1146, 1148 (D. Cal. 2003)(citing *Donahue v. Bill Page Toyota, Inc.*, 164 F. Supp. 2d 778, 782 (E.D. Va. 2001)). Similarly, the Court may not consider attorney's fees and costs in calculating the jurisdictional amount. *See Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1239 (D. Cal. 2005). Consequently, the Court may only consider the actual damages Plaintiff sustained and any civil penalties available to him under the Song-Beverly Act.

It is undisputed that Plaintiff paid $28,134.39 for the Mustang and could recover that sum as actual damages were he to prevail in this action. It is likewise undisputed that Plaintiff paid $1,898.81 to Solis Collision Center for repairs to the vehicle. Plf.s' Add'l. Stmt. of Undisp. Fact ¶ 41.

12

This sum, too, may be considered toward the amount in controversy.  In a best case scenario, Plaintiff's actual damages total $30,033.20.

Plaintiff generally avers the Court should consider the civil penalties available under the Song-Beverly Act of up to two times the actual damages (excluding the repair cost paid to Solis Collision Center) for a total of $84,103.17.  Plf.s' Supp. Brief 4:15-18.  Predictably, Defendant contends that Plaintiff is only entitled, at best, to three times the repair cost for a total of $5969.43.  The Court rejects both calculations finding instead that Plaintiff cannot meet the $50,000 threshold because he cannot include the civil penalties provided under the Song-Beverly Act.

California Civil Code section 1794(c) provides in pertinent part:

> "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages. This subdivision shall not apply ... with respect to a claim based solely on a breach of an implied warranty.

This provision makes clear that civil penalties are not available in causes of action based solely on breach of an implied warranty.  Plaintiff concedes that his only remaining cause of action against Defendant under the MMWA is for breach of an implied warranty.  Plf.s' Supp. Brief 1:17-19.

Although Plaintiff is clearly not entitled to civil penalties and, therefore, cannot meet the jurisdictional minimum, he seeks leave of this Court to amend his Complaint.

///

13

**B.   Leave to Amend**

As Plaintiff tacitly acknowledges, the Complaint as pled does not permit this Court to exercise its jurisdiction over his MMWA claim.  Nonetheless, Plaintiff requests leave of Court to correct the deficiencies therein.  The Court denies Plaintiff's request based both on the untimely nature of Plaintiff's request as well as the Pretrial Scheduling Order.

First, the timing of Plaintiff's request to amend, after the Parties have conducted discovery and a Summary Judgment Motion has been filed, weighs against allowing leave.  *See Hawkins v. Portal Publs., Inc.*, 1999 U.S. App. LEXIS 18312 (9th Cir. 1999) (citing *Schlacter-Jones v. General Tel.*, 936 F.2d 435, 443 (9th Cir. 1991)).  "A motion for leave to amend is not a vehicle to circumvent summary judgment."  *Schlacter-Jones*, 936 F.2d 443; *see also Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (finding no abuse of discretion where district court denied request for leave to amend made after summary judgment motion with benefit of discovery was pending).  In addition, the Court points Plaintiff to Paragraph II of the Pretrial Scheduling Order ("PTSO") which provides "[n]o joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown."  The PTSO "controls the subsequent course of the action" unless modified by the Court.  Fed. R. Civ. P. 16(e).  Here, the Court declines to modify the PTO as Plaintiff has failed to show that doing so is warranted.  In addition, the Court finds that sufficient prejudice will result to Defendant should leave be extended at this late juncture.

14

1  Because the MMWA $50,000 minimum amount in controversy is
2  "to avoid trivial or insignificant actions" being pursued in
3  federal courts and because Plaintiff is seeking leave to amend
4  solely to circumvent that jurisdictional minimum, the Court finds
5  insufficient cause to grant Plaintiff's request.  Consequently,
6  the Court finds Plaintiff cannot meet the jurisdictional $50,000
7  minimum destroying jurisdiction over Plaintiff's MMWA claim.

## CONCLUSION

The Court grants Summary Adjudication in favor of Defendant on its FCRA claim.  Further, the Court finds jurisdiction over Plaintiff's MMWA claim lacking because the amount in controversy cannot be met.  Finally, because the Court has dismissed both federal actions upon which jurisdiction was based, the Court cannot exercise jurisdiction over Plaintiff's remaining state law claims.  Accordingly, those claims are dismissed without prejudice.

IT IS SO ORDERED.

DATED: June 14, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE